| | | |
|---|---|---|
| BAYE SALIOU DIAGNE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | MEMORANDUM & ORDER |
| | ) | |
| MARKWAYNE MULLIN et al., | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**THIS MATTER** is before the Court on Petitioner Baye Saliou Diagne's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) and Motion for Temporary Restraining Order and Preliminary Injunction. (Doc. No. 3). Petitioner asserts that he has been illegally detained by the United States Department of Homeland Security's Immigration and Customs Enforcement ("ICE") since April 21, 2026. Petitioner filed the present motion for temporary restraining order requesting that this Court order his release or direct Respondents to provide a prompt, individualized bond hearing consistent with 8 U.S.C. § 1226(a). After reviewing the parties' submissions and considering the arguments at hearing, the Court will deny the motion and dismiss the petition without prejudice for failure to exhaust administrative remedies.

## I. BACKGROUND

Petitioner brings this petition against Markwayne Mullin, in his official capacity as Secretary of the U.S. Department of Homeland Security ("DHS"); Todd Lyons, in his official capacity as Acting Director of ICE; Todd Blanch, in his official

capacity as acting Attorney General of the United States; and John Doe, Field Office Director for ICE in Charlotte, North Carolina. (Doc. No. 1 at 3–4).

On January 28, 2022, Petitioner Baye Saliou Diagne, a native and citizen of Senegal, illegally entered the United States without inspection or admission. (Doc. No. 1 ¶ 16; 7-1 at 2 ¶¶ 4–5; 7-1 at 6–8). That day, United States Customs and Border Protection ("CBP") encountered Petitioner near Eagle Pass, Texas, and took him into custody. *Id.* On January 31, 2022, Petitioner was placed in expedited removal proceedings[1] through service of a Form I-860 Notice and Order of Expedited Removal. (Doc. No. 7-1 at 2 ¶ 6; 7-1 at 10). Petitioner was also provided a Form I-296 Notice to Alien Ordered Removed. *Id.* at 2 ¶ 6; *id.* at 12. On or about that same day, Petitioner made a claim for relief from removal to Senegal. *Id.* at 2 ¶ 7; *id.* at 14–17.

After Petitioner was transferred into the custody of ICE Enforcement and Removal Operations ("ICE/ERO"), on March 9, 2022, United States Citizenship and Immigration Services ("USCIS") initiated an interview regarding Petitioner's claim for relief from removal, however, Petitioner's expedited removal process could not move forward due to the unavailability of an interpreter at that interview. *Id.* at 1–2 ¶¶ 1, 9–10. Accordingly, on or about March 11, 2022, USCIS issued a discretionary Notice to Appear ("NTA") and placed Petitioner into removal proceedings under the Immigration and Nationality Act ("INA") § 240, codified at 8 U.S.C. § 1229a. *Id.* at 2 ¶ 10; *id.* at 19, 21–23. The NTA charged Petitioner as inadmissible under 8 U.S.C. § 1182(a)(7)(A)(i)(I). *Id.* at 21. On March 16, 2022, Petitioner received and signed an

---

[1] *See* 8 U.S.C. § 1225(b)(1).

Interim Notice Authorizing Parole under 8 U.S.C. § 1182(d)(5)(A), for a period of one year.[2] *Id.* at 2 ¶ 11; *id.* at 25–26. This notice provides that Petitioner's "parole authorization is valid for one year beginning from the date on this notice and will automatically terminate upon [his] departure or removal from the United States or at the end of the one-year period unless ICE provides [him] with an extension at its discretion." *Id.* at 25. On March 18, 2022, Petitioner was released from detention pursuant to that notice. *Id.* at 2 ¶ 11.

Petitioner's case was scheduled for a master hearing in the San Antonio Immigration Court on April 25, 2022. *Id.* at 3 ¶ 12; *id.* at 28. On April 26, 2022, following the Petitioner's release on interim parole, DHS filed a Notice to EOIR: Alien Address, advising the immigration court of the Petitioner's address in Winston Salem, NC. *Id.* at 3 ¶ 12; *id.* at 30. The San Antonio Immigration Court changed venue to the Charlotte Immigration Court that same day. *Id.* at 32–33. On April 27, 2022, the Charlotte Immigration Court issued a Notice of Hearing setting the Petitioner's case to November 6, 2024. *Id.* at 3 ¶ 14; *id.* at 35.

Almost a year later, on March 13, 2023, Petitioner filed a Form I-589 Application for Asylum with the Charlotte Immigration Court. (Doc. Nos. 1 ¶ 19; 7-1 at 3 ¶ 15). On March 16, 2023, Petitioner's humanitarian parole automatically terminated. *See* (Doc. No. 7-1 at 25). On October 25, 2024, Petitioner, through

---

[2] At the May 29, 2026 hearing, counsel for Petitioner asserted that Petitioner presumably did not understand this notice when he signed it because it was not translated to Petitioner's native language. Counsel did not provide any evidence for this assertion.

counsel, entered written pleadings admitting the allegations and conceding the charges of removability in his Notice to Appear. *Id.* at 3 ¶ 17; *id.* at 40–45.

On April 21, 2026, Petitioner reported to the Charlotte, North Carolina, ICE/ERO office, as part of their regular reporting requirements. *Id.* at 3 ¶ 18. ICE/ERO apprehended him without incident. *Id.* At 4:59 p.m. that day, Petitioner filed his petition for writ of habeas corpus in this Court. *See* (Doc. No. 1). At approximately 5:30 p.m., ICE/ERO transferred Petitioner to the Irwin County Detention Center in Ocilla, Georgia, and Petitioner arrived there at or around 12:30 a.m. on April 22, 2026. (Doc. No. 7-1 at 3 ¶ 18; *id.* at 47–49).

On April 30, 2026, this case was assigned to the undersigned. On May 6, 2026, Petitioner filed a Motion for Temporary Restraining Order and Preliminary Injunction, requesting that this Court order Respondents to either immediately release Petitioner from custody or direct Respondents to provide a prompt, individualized bond hearing consistent with 8 U.S.C. § 1226(a). (Doc. No. 3). On Thursday, May 7, 2026, the Court set a hearing on this matter for May 11, 2026. On May 11, 2026, prior to the hearing, Respondents filed a response to Petitioner's motion, asserting that Petitioner was placed in expedited removal proceedings and is subject to mandatory detention pursuant to 8 U.S.C. § 1225(b)(1). (Doc. No. 6 at 3). At the hearing that same day, the Court granted Respondents' request for additional time to provide the necessary materials and exhibits in this case, and to further brief the issues. Petitioner did not oppose that request.

On May 15, 2026, Respondents filed supplemental factual information,

4

including a Declaration of Daniel Samartin, Deportation Office, ICE/ERO, as well as supporting exhibits. (Doc. Nos. 7; 7-1). On May 18, 2026, Respondents requested additional pages for their supplemental briefing because upon their review of the supplemental factual information, they discovered that Petitioner was no longer in expedited removal proceedings, but rather, was purportedly processed for detention under § 1225(b)(2) and was and is subject to mandatory detention under § 1225(b)(2)(A). (Doc. No. 8 at 3). On May 19, 2026, Respondents filed their supplemental memorandum in support of that realization. (Doc. No. 9). On May 25, 2026, Petitioner filed his response to Respondents' supplemental memorandum, arguing that his detention is governed by § 1226(a), and further, that the Government violated his statutory and constitutional due process rights when it terminated his humanitarian parole. (Doc. No. 10).[3] On May 29, 2026, the Court held a second hearing for arguments on the developing issues in this case.

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus to any person who demonstrates he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *INS v. St. Cyr*, 533 U.S. 289, 301

---

[3] In Petitioner's response and at the second hearing in this matter, Petitioner asserted new arguments in support of his release, primarily, those related to the allegedly unlawful termination of his humanitarian parole. (Doc. No. 10 at 6–8). To the extent Petitioner wishes to pursue these arguments as a basis for his request for habeas relief, Petitioner should raise these claims in an amended petition.

(2001); *see Munaf v. Geren*, 553 U.S. 674, 693 (2008) ("Habeas is at its core a remedy for unlawful executive detention."). In the immigration context, habeas is "regularly invoked on behalf of noncitizens." *St. Cyr*, 533 U.S. at 305. But "'even where a habeas court has the power to issue the writ,' the question remains 'whether . . . that power ought to be exercised.'" *Timms v. Johns*, 627 F.3d 525, 530 (4th Cir. 2010) (quoting *Munaf*, 553 U.S. at 693). "While habeas corpus is 'always available to safeguard the fundamental rights of persons wrongly incarcerated,' it 'is the avenue of last resort.'" *Id.* at 531 (quoting *Martin–Trigona v. Shiff,* 702 F.2d 380, 388 (2d Cir.1983)).

## III.   DISCUSSION

Petitioner argues that this Court should grant his motion for four reasons: (1) Respondents have asserted shifting positions while continuing to detain Petitioner in violation of the Fifth Amendment and fundamental principles of due process; (2) Petitioner is not subject to mandatory detention under § 1225(b)(2)(A); (3) the Court should waive exhaustion of administrative remedies because further proceedings, specifically a bond hearing, would be futile; and (4) the Court has personal jurisdiction over Petitioner's habeas petition. *See* (Doc. Nos. 4, 10). Respondents argue that: (1) this Court lacks jurisdiction over the warden where Petitioner is detained and this Court should transfer this case to the venue where Petitioner is detained; (2) Petitioner should be required to exhaust his administrative remedies and request a bond hearing, particularly in light of the Eleventh Circuit's recent opinion; and (3) Petitioner is detained pursuant to the plain language of § 1225(b)(2)(A). *See* (Doc. No. 9).

### A. Jurisdiction and Venue

The Court first addresses jurisdiction and venue. The parties do not dispute that this Court has jurisdiction to hear Petitioner's claim. Rather, Respondents argue that this Court lacks personal jurisdiction over the Warden of Irwin Detention Center in Ocilla, Georgia, where Petitioner is detained. For that reason, Respondents request that the Court transfer the Petition to the United States District Court for the Middle District of Georgia. (Doc. No. 9 at 24–25). Respondents contend that "the personal jurisdiction[] and venue link is so tenuous" that the Court should exercise "traditional venue considerations" and transfer this case to the venue where the Warden is located. *Id.* at 25. Petitioner opposes transferring venue, arguing that this Court clearly has habeas jurisdiction such that any request for dismissal or transfer should be denied. (Doc. No. 10 at 16–17). The Court agrees with Petitioner.

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). "Whenever a § 2241 habeas petitioner seeks to challenge his present physical custody within the United States, he should name his warden as respondent and file the petition in the district of confinement." *Rumsfeld v. Padilla*, 542 U.S. 426, 447 (2004). In general, "for core habeas petitions challenging present physical confinement, jurisdiction lies in only one district: the district of confinement." *Id.* at 443. "[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release." *Rumsfeld*, 542 U.S. at

7

441.

When Petitioner filed this Petition, he was in ICE's custody in Charlotte, North Carolina, which is within the Western District of North Carolina. Shortly thereafter, the Government moved Petitioner to an ICE detention center in Ocilla, Georgia. Petitioner's transfer outside of this district does not strip this Court of jurisdiction over the Petition because when it was filed, Petitioner was in the custody of ICE in this district. Because the Court has jurisdiction to hear this case, it declines to undergo the discretionary venue-transfer analysis.

### B. Exhaustion of Administrative Remedies

The Court next analyzes whether Petitioner should be required to exhaust administrative remedies. The Court empathizes with Petitioner and recognizes the hardship this situation imposes upon him and his family, especially where he received no notice in advance of his detention. However, the Court agrees with Respondents that Petitioner must exhaust his administrative remedies.

"The doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law and provides that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." *Miranda v. Garland*, 34 F.4th 338, 351 (4th Cir. 2022) (citation modified) (quoting *McKart v. United States*, 395 U.S. 185, 193 (1969)). "Congress may codify the doctrine as a jurisdictional bar, and '[w]here Congress specifically mandates, exhaustion is required.'" *Id.* (alteration in original) (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). But when Congress declines to statutorily

mandate that jurisdictional bar, "sound judicial discretion governs." *Id.*

Generally, "[p]rior to hearing a § 2241 petition, federal courts require exhaustion of alternative remedies, including administrative appeals." *Rodriguez v. Ratledge*, 715 F. App'x 261, 265 (4th Cir. 2017) (per curiam). This "is a prudential restraint, not a statutory requirement. It allows agencies to exercise autonomy and discretion and prevents premature judicial intervention." *Id.* (citation omitted). Similarly, the INA does not require a noncitizen to exhaust administrative remedies prior to asserting a constitutional challenge to its immigration detention procedures. *See Miranda*, 34 F.4th at 351 (4th Cir. 2022). Thus, the Court must use its discretion in determining whether to require exhaustion in the instant case.

When deciding whether to require exhaustion, "federal courts must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *McCarthy v. Madigan*, 503 U.S. 140, 146 (1992). Indeed, "[a]dministrative remedies need not be pursued if the litigant's interests in immediate judicial review outweigh the government's interests in the efficiency or administrative autonomy that the exhaustion doctrine is designed to further." *Id.* "The individual's interests weigh heavily in the following three circumstances: (1) when requiring exhaustion may prejudice subsequent court action; (2) when an agency's remedy may be inadequate; and (3) when the 'administrative agency body is shown to be biased or to have otherwise predetermined the issues before it.'" *Cavalier Tel., LLC v. Va. Elec. & Power Co.*, 303 F.3d 316, 323 (4th Cir. 2002) (first quoting *Volvo GM Heavy Truck*

9

*Corp. v. Dep't of Labor*, 118 F.3d 205, 211 n.8 (4th Cir. 1997), then citing *McCarthy*, 503 U.S. at 147–48).

Petitioner's counsel informed the Court at the hearing that Petitioner had not yet requested a bond hearing. Instead, Petitioner argues that the Court should not require him to make such a request or otherwise exhaust administrative remedies[4] because further bond proceedings would be futile. (Doc. No. 10 at 13–16). Petitioner asserts that overwhelming evidence shows that the bond hearings occurring where Petitioner is detained are futile, however, Petitioner has failed to submit any specific evidence in this case other than presenting the conclusions of other district courts that a bond hearing would be futile. *See id.* Respondents contend that the Court should require Petitioner to exhaust his administrative remedies by requesting a bond hearing, particularly where, as here, he is detained in a jurisdiction in which he will likely receive a bond hearing if so requested. (Doc. No. 9 at 24).

At this stage, the Court is wary of disrupting the administrative process when Petitioner has not even requested a custody hearing. Requiring Petitioner to proceed through the administrative process "allows the agency with subject-matter expertise

---

[4] "When an alien has an opportunity to raise a claim in administrative proceedings but does not do so, he fails to exhaust his administrative remedies as to that claim." *Etienne v. Lynch*, 813 F.3d 135, 138 (4th Cir. 2015) (addressing circuit court reviewability); *Id.* at 141 ("[E]xhaustion of administrative remedies means using all steps that the agency holds out, and doing so properly." (citation modified) (quoting *Woodford v. Ngo,* 548 U.S. 81, 90 (2006))); *see* 8 Gordon *et al.*, Immigration Law and Procedure § 104.02 (2026) ("Exhaustion is satisfied when an issue is raised before the Board of Immigration Appeals (BIA) by anyone in the litigation, whether it is the petitioner, the government, another party, or the BIA itself."); *see also Lizama v. Holder*, 629 F.3d 440, 448–49 (4th Cir. 2011) (concluding the petitioner exhausted the issue when he raised it in his notice of appeal and the BIA addressed it in its decision).

to retain primary responsibility over the area; it avoids unnecessary litigation; and it creates a record in case judicial review is necessary." *Williams v. Reed*, 604 U.S. 168, 184 (2025) (Thomas, J., joined by Alito, J., Gorsuch, J., Barrett, J., dissenting).

Turning to Petitioner's interests, while the Board of Immigration Appeals ("BIA") has shown its predetermination of the issues Petitioner seeks to litigate, *see Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025), Petitioner is detained in the Eleventh Circuit, which has recently rejected the BIA's interpretation and "limits no-bond detention to applicants for admission who are 'seeking admission.'" *Hernandez Alvarez v. Warden, Fed. Det. Ctr. Miami*, 175 F.4th 1258, 1262 (11th Cir. 2026). Indeed, the "BIA . . . is obliged to apply the precedent of the relevant court of appeals in cases arising within the associated circuit — even if the Attorney General or the BIA itself disagrees with that precedent." *Garcia v. Garland*, 73 F.4th 219, 230 n.7 (4th Cir. 2023); *see also Nguyen v. U.S. Att'y Gen.*, 482 F. App'x 501, 503 (11th Cir. 2012) ("We are bound by that prior panel decision of this Circuit . . . . And, for cases arising in the Eleventh Circuit, so is the BIA." (citations omitted)); *Stevens v. Osuna*, 877 F.3d 1293, 1303 (11th Cir. 2017) ("Immigration Judges are also bound both by agency precedent and by precedent established by the federal appellate courts." (citation omitted)).

Thus, it appears that requiring "administrative review of the controlling legal question is likely to result in an agency decision that honors the law" in the Eleventh Circuit where Petitioner is detained. *See, e.g., Biswas v. Mullin*, No. 1:26-CV-1514, 2026 WL 1506015, at *3 (W.D. Mich. May 29, 2026) (dismissing habeas petition for

11

failure to exhaust administrative remedies because a request for a bond hearing would not be futile, where the petitioner is detained in the Sixth Circuit, which means the petitioner will likely be afforded a bond hearing pursuant to § 1226(a)). And based on the Eleventh Circuit's interpretation of the law, the Court does not find that a request for a bond hearing by Petitioner would be futile. *See Hernandez Alvarez*, 175 F.4th at 1285. Additionally, as is the case here, "[r]equiring exhaustion is particularly appropriate when the administrative remedy may eliminate the necessity to decide constitutional questions." *Am. Fed'n of Gov't Emps. v. Nimmo*, 711 F.2d 28, 31 (4th Cir. 1983) (citing *Aircraft & Diesel Equip. Corp. v. Hirsch*, 331 U.S. 752, 772–73 (1947)).

For these reasons, Petitioner must pursue the administrative remedies that are available to him, including requesting a custody hearing before an immigration judge. Should he not receive the remedy he seeks, he is free to file another habeas petition with a full administrative record for a court to consider.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that Petitioner's Motion for Temporary Restraining Order and Preliminary Injunction (Doc. No. 3) is **DENIED** and the Petition is **DISMISSED** without prejudice for lack of exhaustion of administrative remedies.

**SO ORDERED.**

Signed: June 6, 2026

Matthew E. Orso
United States District Judge

12